UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

EDUCATIONAL CREDIT MANAGEMENT )
CORPORATION, )
 )
            Plaintiff, )
 )      No. 1:05-CV-041
v. )      *Edgar / Lee*
 )
CHUCK WILSON, individually and d/b/a )
CHUCK'S CABINET DOORS, )
 )
           Defendant. )

## REPORT AND RECOMMENDATION

### I.   Introduction

On February 16, 2005, plaintiff, Educational Credit Management Corporation ("ECMC") brought this action against Chuck Wilson, individually and d/b/a Chuck's Cabinet Doors, a partnership ("Defendants"), seeking to garnish a portion of Nikki Dawn Eicher Yarbrough's ("Yarbrough") wages as repayment for her student loan pursuant to 20 U.S.C. § 1095a [Doc. No. 1].  On April 13, 2005, ECMC moved for summary judgment [Doc. No. 6].  Defendants failed to file a timely response to ECMC's motion for summary judgment. On May 27, 2005, the Court granted partial summary judgment to ECMC [Doc. No. 9], and referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) to hold an evidentiary hearing to determine the amount of Defendants' liability and the amount, if any, of the attorney's fees, costs, and punitive damages to which ECMC might be entitled.  *Id.*

On July 26, 2005, Defendants filed a motion entitled "Appeal for Failure to Notify" [Doc.

No. 12-1] in which they sought to have the Court reverse its partial summary judgment in favor of ECMC. Specifically, Defendants contended that the summary judgment should be set aside because ECMC repeatedly delivered important documents/pleadings to an incorrect mailing address, a location/address at which Defendants asserted they had not maintained a presence since 2004 [Doc. No. 12-1, ¶¶ 6-8; Chuck Wilson affidavit]. On July 27, 2005, ECMC filed its opposition to the "appeal" motion arguing the appeal was not timely filed [Doc. No. 11]. On August 2, 2005, Defendants filed a motion to dismiss ECMC's complaint, contending that Yarbrough's student loan previously had been paid and discharged in bankruptcy [Doc. No. 14].

The Court liberally construed Defendants' "appeal" motion as one for reconsideration of the Court's grant of partial summary judgment, and issued an order on August 15, 2005 stating it would reconsider the issue of liability and would refer this matter and all motions to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72. An evidentiary hearing (the "hearing") on the issues of liability, damages and attorney's fees was held on August 31, 2005. Prior to the hearing, ECMC filed proposed findings of fact [Doc. No. 18] and a pretrial memorandum [Doc. No. 19]. Defendants also filed proposed findings of fact [Doc. No. 20] and a pretrial brief [Doc. No. 23].

For the reasons set forth herein, I conclude that Defendants' "appeal" motion and motion to dismiss are without merit. Accordingly, I **RECOMMEND** that Defendants' "appeal" motion [Doc. No. 12-1 ] and motion to dismiss [Doc. No. 14] be **DENIED**. I further **RECOMMEND** that ECMC be awarded damages in the amount of $932.58, costs in the amount of $599.92 and attorney's fees in the amount of $4,000.00.

## II.    **Background**

At the hearing, Chuck Wilson and his wife Lori Wilson ("Wilson"), appeared. Wilson represented that she was one of the two partners in Chuck's Cabinet Doors. The caption of ECMC's complaint lists the defending party as "CHUCK WILSON, individually and d/b/a/ CHUCK'S CABINET DOORS, a Partnership." [Doc. No. 1-1]. The Complaints also states that ECMC "files this Complaint against Chuck Wilson, individually and d/b/a Chucks Cabinet Doors . . ." *Id.*

Tenn. Code Ann. § 61-1-307 states in relevant part that:

> (b)    An action may be brought against the partnership and . . . any or all of the partners in the same action or in separate action.

> (c)    A judgment against a partnership is not by itself a judgment against a partner. A judgment against a partnership may not be satisfied from a partner's assets unless there is also a judgment against the partnership . . .

In *Carlton v. B & S Used Cars #2*, No. 01A01-9310-CH-00446, 1994 WL 68265 (Tenn. Ct. App. Mar. 9. 1994), the Tennessee Court of Appeals stated that

> If a suit is worth bringing, it is worth bringing correctly, as to the names of both plaintiff and defendant . . . if partners are involved their individual and partnership names should be included.

*Id.* at *2. ECMC did just that in the caption of its complaint – it included the name of a partner, "Chuck Wilson, individually" and it also included the name of the partnership as "d/b/a/ Chuck's Cabinet Doors, a Partnership" [Doc. No. 1-1]. Moreover, it included these names in the conjunctive. Thus, although ECMC may have labeled these two entities as a single defendant, it appears to the Court that its complaint actually names two defendants – Chuck Wilson, the individual partner and Chuck's Cabinet Doors, the partnership. This interpretation is consistent with the holding in Carlton where the plaintiff named B & S Used Cars # 2 as the defendant. *Carlton*, 1994 WL 68265 at *1.

3

Thirty days after judgment, the plaintiff moved to amend the judgment and pleadings to add Wallace Porter Mitchell, the owner of B & S Used Cars #2, as a defendant. The trial court denied the plaintiff's motion to amend the pleadings. On appeal, the Tennessee Court of Appeals reversed the denial of the motion to amend. It concluded that as service was made on Wallace Porter Mitchell in the action, he had notice and received due process of law, and, therefore, the motion to amend should have been granted. *Id.* at *4. In this case, service was made on Chuck Wilson and he appeared, but did not testify, at the hearing. Accordingly, I conclude that both Chuck Wilson and Chuck's Cabinet Doors have been named as parties.

At the outset of the hearing, Wilson declined the Court's offer to continue the hearing to permit Defendants time to obtain counsel stating they could not afford counsel and wished to proceed *pro se*. In response to the Court's inquiry, counsel for ECMC stated ECMC is seeking damages in the form of the monies that should have been garnished from Yarbrough's wages earned during her employment at Chuck's Cabinet Doors, attorney's fees and costs, but ECMC is not seeking punitive damages. Wilson and Attorney Bruce Bailey ("Bailey") were the only witnesses who testified during the hearing.

_Lori Wilson's Testimony_

Wilson, who was first called as a witness by ECMC, testified that she and her husband are partners in Chuck's Cabinet Doors. Wilson testified that Yarbrough became an employee at Chuck's Cabinet Doors sometime during the summer of 2004 and continued working there until she quit her job at the end of July 2005.

Wilson testified that the first communication received from ECMC concerning garnishment was a November 5, 2004 second notice/letter [Plaintiff's Exhibit 1]. Wilson admitted that she was

aware that the record contains other, earlier notices of garnishment, which apparently were mailed by ECMC to an incorrect or former address. However, Wilson unequivocally testified that the first notice of garnishment Chuck's Cabinet Doors actually received was the second notice/letter dated November 5, 2004.

Wilson testified that Chuck's Cabinet Doors did not begin to garnish Yarbrough's wages upon receipt of the second notice/letter because she had some concerns about the validity of the garnishment. Among other things, the second notice/letter did not contain the maiden name in which Yarbrough received the loan. Wilson telephoned ECMC at the number listed in the second notice/letter, and requested a court ordered garnishment from ECMC. Wilson made this request because, in response to her concerns about the validity of the garnishment, she had spoken with a representative of the Tennessee Department of Human Services who told her to ask for an order of garnishment issued by a court.

Wilson agreed that Chuck's Cabinet Doors also received a letter from an in-house attorney for ECMC dated January 7, 2005 [Plaintiff's Exhibit 2], which stated that if Chuck's Cabinet Doors did not garnish Yarbrough's wages, ECMC was prepared to bring a legal action. Wilson stated that upon receipt of the January 2005 letter she called ECMC's attorney, and again requested a court ordered garnishment. Wilson also testified that she told ECMC's attorney that she believed Yarbrough had paid the loan because part of the loan was discharged in bankruptcy, and Yarbrough had made all required payments on the loan.

Wilson admitted that at no time did Chuck's Cabinet Doors garnish any wages from Yarbrough and remit them to ECMC. Wilson admitted that Chuck's Cabinet Doors also did not escrow any of Yarbrough's wages. Wilson prepared wage statements in the usual course of

5

business, including Yarbrough's 2004 wage statement [Plaintiff's Exhibit 3], and Chuck's Cabinet Doors' wage reports for the first quarter of 2004 [Plaintiff's Exhibit 4] and the second quarter of 2005 [Plaintiff's Exhibit 5] which reflect earnings by Yarbrough.

Wilson also testified on behalf of Defendants and introduced a form from the Handbook for Student Loans from the United States Department of Education ("handbook") [Defendants' Exhibit 1]. Wilson stated that she found the handbook on the internet in June 2005 and she cited it as an example of the form that she thought guaranty agencies were required to use to initiate garnishment proceedings. Wilson stated that ECMC did not follow the handbook forms in filing its garnishment with Chuck's Cabinet Doors. Wilson admitted, however, that Chuck's Cabinet Doors was not aware of the handbook when Chuck's Cabinet Doors received the letters concerning garnishment from ECMC.

*Bruce Bailey's Testimony*

Bailey testified that he is an attorney with Chambliss, Bahner & Stophel in Chattanooga. Bailey has been practicing law for 28 years and regularly prepares billing statements as part of his practice of law. Bailey testified that his firm prepared a summary of the billing for the representation of ECMC in this action [Plaintiff's Exhibit 6] and that the billing summary was current through August 30, 2005, the day before the hearing. Bailey further testified that the hourly rates for the attorney's fees and the number of hours sought were reasonable and that an effort had been made to minimize fees.

On cross-examination, Bailey testified that attorney's fees in the amount of six times actual damages were not unreasonable in this case because ECMC, as a guaranty agency, had a duty to protect taxpayers by pursuing student loans, even where the costs are disproportionate. Bailey

6

testified that garnishments in state court generally cost about $1,000.00 if uncontested, but that the cost would increase if the garnishment was contested as it is in this matter. Bailey also testified that Yarbrough's student loan was not actually discharged in her bankruptcy proceedings because there was no finding of undue hardship or an adversary proceeding at the time of the purported discharge.

## III.    Defendants' Motions

Defendants filed their "appeal" motion more than ten days after the Court granted partial summary judgment in favor of ECMC, and thus it must be construed as a Rule 60(b) motion. *White-Bey v. McMeekin*, 198 F.3d 248, 1999 WL 1045106 at *1 (6th Cir. Nov. 10, 1999) (unpub.) (citing *Peake v. First Nat'l Bank and Trust Co.*, 717 F.2d 1016, 1019-20 (6th Cir. 1983). "Any post-judgment motion that asks for relief other than correction of a purely clerical error and which is filed more than ten days after entry of judgment is construed as a Rule 60(b) motion." *Bragg v. Perez*, 42 Fed. Appx. 678, 680 (6th Cir. May 7, 2002), *cert. denied*, 537 U.S. 1216 (2003).

The specified reasons upon which a Rule 60(b) motion may be granted are:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

*Turner v. Barton*, 9 Fed. Appx. 333, 334 (6th Cir. May 8, 2001) (quoting *Feathers v. Chevron U.S.A.*, 141 F.3d 264, 268 (6th Cir. 1998)). Relief from legal error cannot be premised on Rule 60(b)(6) absent "other exceptional or extraordinary circumstances." *Id.* (citing *Hopper v. Euclid Manor Nursing Home*, 867 F.2d 291, 294 (6th Cir. 1989)).

In their proposed findings of fact, Defendants have advanced the following grounds for relief:

> 5. Chuck's Cabinets has not failed to comply with a Wage Withholding Order, they have simply requested a Court Ordered Garnishment or the form SF-329B (the form that the U.S. Department of Education requires to be sent to an employers [sic] requesting garnishment for a student loan). . . .
>
> . . . .
>
> 8. . . . The first notice received by Chuck's Cabinets was received on Nov. 8, 2004. . . . Upon receipt of the Nov. notice, ECMC was immediately contacted by the Defendant to request a Court Ordered Garnishment, as recommended by the Tennessee Department of Employment Security. . . .
>
> . . . .
>
> 11. The first notice from ECMC was received on Nov. 8, 2004. ECMC was contacted on several occasions after the Defendant received the original notice on Nov. 8, 2004. . . . The Form SF-329B would also have served as the correct document for garnishing for a student loan. . . .

[Doc. No. 20-1]. In their motion to dismiss, Defendants argue no debt is due because it was paid and discharged in Yarbrough's bankruptcy proceedings, and that Yarbrough was not afforded certain statutory rights and thus the action by ECMC is improper [Doc. No. 14-1]. In summary, Wilson has articulated two grounds to support reconsideration of the Court's liability decision: (1) Chuck's Cabinet Doors did not receive due process as an employer based upon garnishment information received from ECMC; and (2) the garnishment is improper. These grounds will be addressed below.

8

(a) **Whether Legally Sufficient Information Was Received to Withhold Wages**

As to Defendants' claim that they did not garnish Yarbrough's wages because the second notice/letter might have been false or fabricated, that argument was rejected in the Court's grant of partial summary judgment in favor of ECMC [Doc. No. 8]. The pertinent portion of the Court's memorandum supporting summary judgment states:

> The Defendants also contend, essentially, that they refused to garnish Yarbrough's wages, as ordered by ECMC's letters, because they believed the garnishment orders to be false or fabricated. After receiving the garnishment orders from ECMC, the Defendants contacted the Tennessee Department of Labor ("TDOL") to verify the orders' authenticity. According to the Defendants, TDOL advised that ECMC's garnishment letters did not comply with Tennessee law because they were not orders entered by a Court. Armed with this information, the Defendants allegedly contacted ECMC, seeking an authentic and official wage garnishment order that complied with Tennessee law to which ECMC replied that it need not comply with Tennessee law. Given these communications, the Defendants believed ECMC's garnishment letters to be fabricated, and, therefore, the Defendants refused to withhold Yarbrough's wages.

> Contrary to the Defendants' contention, ECMC's garnishment letters were authentic. Both the statutory provision and the federal regulation authorize a guaranty agency to administratively garnish a borrower's wages. 20 U.S.C. § 1095a(c); 34 C.F.R. § 682.410(b)(9)(i)(I). Indeed, the statute provides as follows: "The notice to the employer of the withholding order shall contain only such information as may be necessary for the employer to comply with the order." 20 U.S.C. § 1095a(c); *accord* 34 C.F.R. § 682.410(b)(9)(i)(I). ECMC's garnishment letters contained sufficient information, including the borrower's name, address, and social security number, the amount of the debt; ECMC's federal tax identification number; and the federal statute authorizing the garnishment order. . . . ECMC's garnishment letters complied with the requirements of the garnishment provision and the federal regulations and were authentic.

> Contrary to the Defendants' contention, a guaranty agency seeking to garnish an employee's wages pursuant to 20 U.S.C. § 1095a need

9

not comply with state laws governing garnishment orders. Indeed, § 1095a permits a guaranty agency to administratively garnish wages "[n]otwithstanding any provision of State law." 20 U.S.C. § 1095a(a). By these terms, the statute expressly preempts any state law governing garnishments. *Savage v. Scales*, 310 F. Supp.2d 122, 133-34 (D.D.C. 2004); *Nelson v. Diversified Collection Servs., Inc.*, 961 F.Supp. 863, 872 (D. Md. 1997); *Clear v. Missouri Coordinating Bd. for Higher Education*, 23 S.W.3d 896, 900 (Mo. Ct. App. 2000). Accordingly, ECMC did not have to comply with Tennessee state law and obtain a court order to garnish Yarbrough's wages. Consequently, despite their understanding of Tennessee law, the Defendants were still required to garnish Yarbrough's wages, as ordered in ECMC's garnishment letters.

[Doc. No. 8, pp. 5-7] (emphasis in original). Defendants were not entitled to a court ordered garnishment before they began to garnish Yarbrough's wages. Nothing was presented at the hearing which challenged this determination by the Court.

Wilson unequivocally testified that Defendants did not receive any garnishment letters/notices from ECMC until receipt of the November 5, 2004 second notice/letter, which was followed by the January 7, 2005 letter [Plaintiff's Exhibit 1 and 2]. Defendants question whether the form of the letters/notices received were adequate to require Chuck's Cabinet Doors to withhold wages. The November 5, 2004 second notice/letter contained Yarbrough's name, social security number, the balance due and ECMC's tax identification ("ID") number. Although it did not contain an address for ECMC, it listed two telephone numbers at which ECMC could be contacted. During the hearing, Wilson testified that she did contact ECMC upon receiving the November 5, 2004 second notice/letter. I find the November 5, 2004 second notice/letter sufficient to require Chuck's Cabinet Doors to begin to withhold wages. Title 20 C.F.R. § 1095a(c); *accord* 34 C.F.R. § 682.410(b)(9)(i)(I) ("[t]he notice given to the employer . . . must contain only the information as may be necessary for the employer to comply with the withholding order.").

In addition, the letter of January 7, 2005 from Troy Gunderman ("Gunderman"), an associate attorney at ECMC, states that ECMC was prepared to file a lawsuit due to the Defendants' failure to comply with the Order of Withholding. Gunderman's letter also states that a copy of the previously sent Order of Withholding Earnings was enclosed with the January 7, 2005 letter, but no evidence of any enclosure to the letter was presented at the hearing. Gunderman's letter warns:

> Pursuant to 20 U.S.C. § 1095a and 34 C.F.R. § 682.410(b)(9), you are required to remit ten percent (10%) of Nikki Yarbrough's disposable income . . . To date . . . you have refused to comply with the law. Accordingly, ECMC . . . is prepared to file a lawsuit against you to recover all amounts you have failed to withhold, plus attorney fees, costs . . . as authorized by 20 U.S.C. § 1095a(a)(6).

[Plaintiff's Exhibit 2]. The letter asked Chuck's Cabinet Doors to contact Gunderman by January 21, 2005 to make arrangements pursuant to the Order of Withholding Earnings. Wilson admitted that she called Gunderman after receiving the January 7, 2005 letter, but after speaking with him Defendants continued to refuse to withhold earnings.

Wilson's argument that the garnishment form received from ECMC was not the Form SF-329B contained in the handbook, which is available online at www.ed.gov, fails. While Wilson argues the notice of garnishment received from ECMC was not on Form SF-329B and did not contain identical information as the form, she also admits that she was not even aware of the handbook and Form SF-329B until she found the documents during an internet search sometime in May or June 2005. In addition, Defendants have not shown that the garnishment letters/notices at issue must comply with the forms contained in the handbook. The handbook states in pertinent part:

> ED has relied on Section 488A of the Higher Education Act, 20 U.S.C. § 1095a, to conduct administrative wage garnishment. This provision authorized ED and student loan guarantors to administratively garnish up to 10 percent of the debtor's disposable pay to collect defaulted, Federally-financed student loans. Debtors

11

> can agree to withholding of a larger amount. This Federal law supersedes any state laws that might prohibit or limit wage garnishment, or would allow garnishment only through a court order.
>
> ED now relies on 31 U.S.C. § 3720D, a very similar Federal law that authorizes Federal agencies to conduct administrative wage garnishment of up to 15 percent of the debtor's disposable pay.

Handbook, p. 5. Here, the garnishment was not predicated on 31 U.S.C. § 3720D, it was predicated on 20 U.S.C. § 1095a. Defendants' assertion that ECMC was required to use a Form SF-329B for its garnishment is without merit.

I conclude Defendants have not established any material facts or legal basis to alter or amend the Court's grant of partial summary judgment in favor of ECMC based upon any claim that Chuck's Cabinet Doors did not receive a court ordered garnishment, a SF-329B form, or other appropriate information.

**(b)**     **Whether Yarbrough's Debt Was Discharged or Paid**

Defendants' argument that Yarbrough's student loan had been discharged or paid also fails under the undisputed evidence. Defendants assert that Yarbrough received a discharge of a portion of the loan in bankruptcy and paid off the undischarged portion of the loan.[1]  In response, ECMC

---

[1] Attached to Defendants' Proposed Findings of Fact as Exhibit H [Doc. No. 20-9] is a Final Report and Account From the United States Bankruptcy Court. The account lists the amount owed by Yarbrough to ECMC as $1,882.04 and indicates that the balance due to ECMC is $192.84. At the hearing, Wilson then introduced three statements from BB&T as Defendants' Exhibits 7, 8 and 9. These three exhibits consist of a notice of debt collection from Allied Interstate for ECMC and three BB&T savings account statements showing $50.00 withdrawals by Yarbrough. Wilson asserted that there were five such $50.00 payments, although she had documentation of only three; and, that the five payments of $50.00 were payment of the remaining $192.84 balance on Yarbrough's student loan. However, the Allied Interstate Statement dated February 26, 2003, which is part of Defendants' Exhibit 7, reflects a balance due to ECMC of $1,574,74. Further, the Allied Interstate statement dated April 29, 2005, which is part of Defendants' Exhibit 9 reflects a balance due to ECMC of $1,483.10. These two statements are dated after the Chapter 7 Discharge of a Debtor in Yarbrough's bankruptcy proceeding, which is attached as Exhibit I to Defendants' Proposed Findings of Fact [Doc. No. 20-10]. The Chapter 7 Discharge of Debtor is dated January

asserts that Defendants did not have standing to assert claims regarding the validity of Yarbrough's underlying student debt owed to ECMC or whether she received her statutory right to contest the debt.

In *Northwest Educ. Loan Ass'n v. Washington State Grange*, No. 31851-2-II, 2005 WL 1754105 (Wash. App. Div. 2 Jul 26, 2005), Toni McKinley, an employee of Washington State Grange ("Grange") defaulted on portions of a federal student loan on which NELA was the loan guaranty agency. *Id.* at *1. NELA filed wage withholding/garnishment orders with Grange, but Grange chose not to withhold and remit any of McKinley's wages to NELA. NELA sued Grange for the amount of wages it should have withheld, punitive damages, attorney fees and costs. *Id.* In response, Grange filed a cross-motion for summary judgment asserting various defenses. The Court of Appeals of Washington held that Grange had no standing because any injury resulting from the garnishment would have resulted to McKinley and McKinley had not made a successful assignment of her personal rights to Grange. *Id.* at *4. *See also Educational Management Corp. v. Cherish Products, Inc.*, 312 F. Supp.2d 1183, 1186 (D. Minn. 2004) ("The employer is required by [20 U.S.C. § 1095a] to garnish the employees wages. The only defense available is for the debtor to challenge the existence or the amount of the debt.").

At the hearing, Wilson presented an affidavit dated August 30, 2005 signed by Yarbrough. The affidavit states in pertinent part:

> I DO ASSIGN MY PERSONAL RIGHTS TO CHUCK AND LORI
> WILSON D/B/A/ CHUCK'S CABINETS TO ACT ON MY
> BEHALF IN THE CONTESTING OF THIS STUDENT LOAN
> DEBT. THIS DEBT HAS BEEN PAID THRU THE

_____

25, 2002 and stated that Yarbrough was granted a discharge under section 727 of title 11, United States Code.

> BANKRUCY[*sic*] 13 AND 7 AND THRU THE BANK DRAFTS IN
> 2003.
>
> I DO NOT OWE THE LOAN IN QUESTION IN THIS LAWSUIT.
> MY HUSBAND AND I FILED A CHAPTER 13 BANKRUCY[*sic*]
> IN 1999 AND IT MADE PAYMENTS DIRECTLY TO ECMC IN
> MY NAME. . . .

This affidavit was not admitted into evidence at the hearing. However, assuming *arguendo* that it

does give Defendants standing to contest the underlying debt, Defendants have not shown that the

debt is not due and subject to garnishment.

As noted, attached to Defendants' proposed findings of fact is the January 25, 2002 discharge

in bankruptcy in Yarbrough's Chapter 7 bankruptcy action [Doc. No. 20-10]. It appears

Yarbrough's bankruptcy started out as a Chapter 13 proceeding and then was converted to a Chapter

7 bankruptcy proceeding. However, in order to obtain a valid discharge of a student loan in

bankruptcy, the debtor must institute "an adversary proceeding to discharge her student loan debt

. . ." *In re Ruehle*, 412 F.3d 679, 682 (6th Cir. 2005); *In re Wedell*, ___ B.R. ___, 2005 WL

2015080 (W.D. Wash. Aug. 22, 2005). More specifically, "to justify the discharge of a student loan

debt, a debtor must establish undue hardship by filing a complaint for an adversarial hearing and

serving the creditor with a summons." *Ruehle*, 412 F.3d at 681 (citing Fed. R. Bankr. P. 7003, 7004).

Where the bankruptcy debtor fails to institute such an adversary proceeding, the order discharging

her student loan debt "is void." *Id.* at 482.

Defendants have not presented any evidence Yarbrough (or Defendants acting in her behalf)

instituted an adversarial proceeding for the discharge of Yarbrough's student debt or that the

bankruptcy court made a finding her student loan should be discharged under the undue hardship

provision set forth at 11 U.S.C. § 523(a)(8). *Wedell*, 2005 WL 2015080 at *1. Accordingly,

14

assuming *arguendo* that Yarbrough's affidavit gives Defendants standing to challenge Yarbrough's student loan debt, Defendants have failed to make the necessary showing that her debt was discharged in bankruptcy in a proceeding sufficient to actually discharge the debt. Thus, I conclude that Defendants' assertion that they should not be held liable for damages, attorney fees and costs under 20 U.S.C. § 1095a because Yarbrough's debt has been discharged or paid is without merit. Likewise, Defendants have not presented any evidence to indicate that they have timely invoked any statutory rights Yarbrough may have to contest the debt. Accordingly, I **RECOMMEND** that Defendants' motions [Doc. Nos. 12, 14] be **DENIED**.

## IV. Damages, Costs, and Attorney's Fees

Pursuant to 20 U.S.C. § 1095a(a)(6):

> the employer shall pay to the Secretary or the guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the Secretary or the guaranty agency, as appropriate, may sue the employer in a State or Federal Court of competent jurisdiction to recover, any amount that such employer fails to withhold from wages due an employee following receipt of such employer of notice of the withholding order, plus attorneys' fees, costs, and, in the court's discretion, punitive damages.

Thus, the statute explicitly authorizes damages, attorneys' fees and costs as sought by ECMC.

**(a)** **Damages**

ECMC seeks $947.03 in damages based upon Defendants' failure to remit payments to ECMC for the last quarter of 2004 and the first two quarters of 2005 pursuant to the garnishment [Doc. No. 18-1, ¶ 8]. This calculation is based upon Yarbrough's 2004 wage statement and Chuck's Cabinet Doors' wage reports for the first and second quarters of 2005.

Wilson unequivocally testified, however, that the first notice of garnishment for Yarbrough's wages received by Defendants from ECMC was the second notice/letter dated November 5, 2004.

15

Wilson also testified that Yarbrough was an employee at Chuck's Cabinet Doors through the end of July 2005. She could not remember the exact date that Yarbrough ceased her employment with Defendants, but agreed that Yarbrough was an employee at Chuck's Cabinet Doors at least through the first three weeks of July 2005. Wilson also testified that Yarbrough was paid $300 per week by Chuck's Cabinet Doors at all relevant times. She stated that 7.65 % or .0765 of Yarbrough's weekly wages was withheld for Social Security ("FICA") and Medicare withholding and $18.00 dollars per week was deducted for federal income tax withholding purposes.

ECMC calculated $947.03 in claimed damages based upon Defendants failure to remit payments to ECMC for the last quarter of 2004 and the first two quarters of 2005[Doc. No. 18-1, ¶8]. This calculation includes the month of October 2004, which is before Defendants received notice of the garnishment, but it also does not include the three weeks in July 2005 during which it is undisputed Yarbrough worked for Chuck's Cabinet Doors.

Applying Wilson's calculations regarding deductions from Yarbrough's gross pay, and accepting her testimony that Yarbrough left Chuck's Cabinet Doors after the first three weeks in July 2005, Yarbrough worked at Chuck's Cabinet Doors for eight weeks in 2004 after the November 5, 2004 second notice letter of garnishment and 28 weeks in 2005, for a total of 36 weeks. Since Wilson testified that Yarbrough earned $300 per week, her total gross wages would have been $10,800 (36 x $300 = $10,800). Further, $826.20 would have been withheld for FICA and Medicare ($10,800 x .0765 = $826.20) and $648.00 would have been withheld for federal income tax ($18.00 x 36 = $648.00). Thus, $10,800.00 in gross wages minus $826.20 in FICA and Medicare withholding, minus $648.00 in federal income tax withholding, equals $9,325.80 in net wages paid to Yarbrough for the relevant period. Pursuant to 20 U.S.C. § 1095a, Defendants would have been

required to garnish/withhold ten percent of Yarbrough's net wages and remit them to ECMC pursuant to the notice of garnishment. Therefore, $932.58 ($9,325.80 x 10% = $932.58) should have been remitted to ECMC during the relevant period.

Accordingly, I conclude that ECMC is entitled to $932.58 in damages for the relevant period and **RECOMMEND** that ECMC be awarded $932.58 in damages pursuant to this Court's grant of partial summary judgment in favor of ECMC on the issue of liability.

    **(b)**    **Attorney's Fees and Costs**

At the hearing, ECMC requested an award of $331.43 in costs and $7,241.01 in attorney's fees [Plaintiff's Exhibit No. 6]. ECMC's claims it has been or will be charged $3,222.58 in accounts receivable, $331.43 in costs advanced, and $3,687.00 in unbilled time, for a total of $7,241.01 [Plaintiff's Exhibit 6]. A review of the supporting documentation reveals that this total consists of $6,640.00 in attorneys' fees and $599.92 in costs for a total of $7,239.92.[2]

    **1.**    **Costs**

The first page of the Statement of Account lists costs advanced as $331.43, unbilled time as $3,687.00 and accounts receivable as $3,222.58 as accounts receivable. However, a review of the supporting documentation, particularly the billing information memorandum, lists $330.34 in unbilled costs advanced [Plaintiff's Exhibit 6, Billing Information Memo, p. 2]. In addition, the invoices sent from Chambliss, Bahner & Stophel to ECMC [Plaintiff's Exhibit 6, Invoices No. 285787, p. 2; Invoice No. 287840, p. 2; Invoice No. 290133, p. 2; and Invoice No. 30041, p. 3] list

---

[2] The discrepancy between the totals set forth above is $1.09. On the first page of their Statement of Account, ECMC's counsel listed the costs advanced as $331.44, but on page 2 of the supporting documentation, the costs advanced are listed as $ 330.34 [Plaintiff's Exhibit 6]. This has resulted in the $1.09 discrepancy.

costs already billed to ECMC. The total of the unbilled costs and the costs listed in the invoices already sent to ECMC is $599.92. I find costs of $599.92 is reasonable and I **RECOMMEND** that ECMC be awarded $599.92 in costs in this matter.

### 2.     Attorney's Fees

ECMC seeks $6,640.00 in attorney's fees. At the hearing, Defendants objected to the amount of the attorney's fees sought by ECMC as being disproportional to the amount of damages recovered, *i.e.,* the attorney's fees and costs are more than seven times the amount of actual damages. At least one court has recognized the attorney's fees provision in 20 U.S.C. § 1095a permits a guaranty to recover its reasonable attorney's fees. *Educational Credit Management Corp. v. Cherish Products, Inc.*, 247 F. Supp.2d 1132, 1134 (D. Minn. 2003). A reasonable attorney's fees compensates counsel yet avoids a windfall. *Hoge v. Honda of America Mfg., Inc.*, No., 2:00-cv-995, 2003 WL 1338227, *1 (S.D. Ohio Mar. 3, 2003). Disproportionality does not foreclose the recovery of fees, and proportionality may be considered as part of a fee request, but it is not required. *Id.* (citing *Northeast Women's Center v. McMonagle*, 889 F.2d 466 (3rd Cir. 1989); *R.M. Perez and Associates, Inc. v. Welch*, 960 F.2d 534 (5th Cir. 1992)). A district court has discretion in determining the amount of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Further, the fee applicant bears the burden of establishing entitlement to an award. *Id.* Finally, the Court should "provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the . . . court should make clear that it has considered the amount of the fee awarded and the results obtained." *Id.*

In its memorandum concerning the grant of partial summary judgment in favor of ECMC,

18

the Court stated:

> Because the Defendants' confusion does not absolve them of liability
> does not mean that their confusion was not legitimate. Indeed, given
> the nature of the letter – a wage garnishment order – it certainly
> seems reasonable for an employer to expect a document more official
> than a letter from a guaranty agency before garnishing an employee's
> wages. And after the Defendants informed ECMC that they wanted
> an official garnishment order entered by a court, similar to the one
> required under Tennessee law, it seems to the Court that ECMC
> could have averted this litigation altogether. Indeed, in their answer,
> the Defendants indicated that they "do[] not have a problem in
> withholding [Yarbrough's wages] for a true and legal garnishment."
> [Doc. No. 5 at ¶ 14]. For minimal time and expense, ECMC could
> have obtained a court order, placating the Defendants' fears.
> Nonetheless, the parties find themselves embroiled in this lawsuit,
> and the Defendants' contention that the wage garnishment orders
> were not official does not absolve them of liability.

[Doc. No. 8, p. 7].

In addition, Wilson testified that the first notice of garnishment received by Defendants was

the November 5, 2004 second notice/letter. This second notice/letter is different from other notices

attached to ECMC's complaint. Attachments to the complaint include a July 13, 2004 and

September 21, 2004 Order of Withholding From Earnings [Doc. No. 1-2, Exhibit B, C]. The July

and September orders state that Defendants must comply with the orders and that all state laws

governing wage garnishments are superseded. The orders also state the employer could reply to the

Order of Withholding from Earnings by "returning the enclosed form to [ECMC] within ten (10)

business days . . . " *Id.* The November 5, 2004 second notice/letter, however, does not state that

state laws regarding garnishments are superseded. Unlike the two earlier orders, the November 5,

2004 second notice/letter apparently was unaccompanied by any forms for Defendants to return.

*Id.*

Wilson testified that upon receipt of the November 5, 2004 second notice/letter, she

19

immediately called ECMC and raised certain concerns. The only response from ECMC entered into evidence is the January 7, 2005 letter from ECMC Associate Attorney Troy Gunderman [Plaintiff's Exhibit 2]. This letter mentions 20 U.S.C. § 1095a and 34 C.F.R. § 682.410(b)(9), and it warns Defendants that if they do not begin garnishing/withholding Yarbrough's wages, ECMC is prepared to file a lawsuit. *Id.* As noted above, although the January 7, 2005 letter states that copies of the July 13, 2005 and September 21, 2005 orders have been enclosed, no evidence was submitted that the letters were actually enclosed or otherwise received by Defendants. Wilson testified that she spoke with Gunderman after receiving the January 7, 2005 letter and raised concerns, including that Yarbrough's debt had been paid/discharged and again requested a court ordered garnishment.

ECMC appears to have taken no steps to allay the concerns of the owners of a small business who were not represented by an attorney. Indeed, at the outset of the hearing, Wilson stated that Defendants had attempted to retain counsel regarding the garnishment but were unable to afford the requested retainer. Further, as this Court noted in its memorandum concerning the grant of partial summary judgment, although Defendants' concerns about the notice of garnishment were not a legal basis for their failure to garnish/withhold Yarbrough's wages, they were nevertheless valid concerns. In addition, the Court notes that on cross-examination, Bailey testified that the cost of obtaining a court ordered garnishment in state court, if uncontested, would be about $1,000.

Balanced against this, the Court must consider the requirements of 34 C.F.R. § 682.410(b)(6) which states in relevant part:

> (i)     A guaranty agency must engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender. For a non-paying borrower, the agency must perform at least one activity every 180 days to collect the debt, locate the borrower (if necessary), or determine if the

borrower has the means to repay the debt . . . .

(ii)     A guarantee agency must initiate administrative wage
         garnishment proceedings against all eligible
         borrowers . . . .

Pursuant to these regulations, ECMC had no choice but to pursue the administrative garnishment. However, if ECMC had presented information to the Defendants that state laws were superseded and that the debt was not adequately discharged in bankruptcy, then the lawsuit might have been avoided in its entirety.

In contrast, at least since May 27, 2005 when this Court granted partial summary judgment on the issue of liability to ECMC, Defendants should have been aware that their concern about the lack of a court ordered garnishment was not a valid legal defense for the failure to garnish/withhold Yarbrough's wages. The Statement of Account [Plaintiff's Exhibit 6] lists $300.34 in costs and $3,687.00 in attorney's fees for actions taken subsequent to the May 27, 2005 grant of summary judgement. Had Defendants at least begun garnishing/withholding Yarbrough's wages as of the date of this Court's grant of summary judgment on the issue of liability to ECMC, they could have reduced the potential amount of attorney's fees and costs they are now facing. Finally, the Court is aware that, at least on the face of the applicable documents, it does appear that the student loan debt was discharged in a bankruptcy proceeding. There is no record of any attempt by ECMC to demonstrate to Defendants that such a discharge was void under the circumstances.

Given the amount in dispute and having considered all of the factors set forth above, I **RECOMMEND** that ECMC be awarded attorney's fees in the amount of $4,000.00, which I find to be a reasonable fee under the circumstances.

## V.     Conclusion

For the reasons stated in the above discussion, it is **RECOMMENDED**[3] that:

1).     Defendants' motion for reconsideration of this Court's order of partial summary judgment in favor of ECMC on the issue of liability [Doc. No. 12-1] be **DENIED**;

2).     Defendants' motion to dismiss ECMC's complaint on the grounds that the student loan at issue has either been discharged in bankruptcy or been paid in full [Doc. No. 14] be **DENIED**;

3).     ECMC be awarded damages in the amount of $932.58;

4).     ECMC be awarded costs in the amount of $599.92; and

5).     ECMC be awarded attorney's fees in the amount of $4,000.00.


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide de novo review where objections to this Report and Recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).